UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOLENE TAYLOR,<br><br>        Plaintiff,<br><br>  v.<br><br>IHC HEALTH SERVICES dba ST. GEORGE REGIONAL HOSPITAL,<br><br>        Defendant. | MEMORANDUM DECISION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Civil No. 4:23-cv-00108-AMA-PK<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on a Motion for Summary Judgment filed by Defendant IHC Health Services ("IHC").[1] The Court did not hear oral argument. Based on the parties' briefing and the applicable law, the Court grants Defendant's Motion.

## INTRODUCTION

This case concerns the employment relationship between Plaintiff Jolene Taylor and Defendant IHC. In the instant Motion, IHC seeks summary judgment in its favor on all of Ms. Taylor's claims. Ms. Taylor concedes that summary judgment is appropriate on her claims for discrimination on the basis of race, national origin, age, and disability.[2] Ms. Taylor also does not challenge the granting of summary judgment on her retaliation claim.[3] Based on these concessions, IHC is entitled to summary judgment on those claims. Ms. Taylor's sole remaining

---

[1] ECF No. 23.
[2] ECF No. 27 at 31–32.
[3] *Id*. at 35.

1

claim is that for failure to accommodate, and the Court will limit its recitation of the facts and its analysis to that which is relevant to this issue.

## FACTS

Plaintiff Taylor suffers from various medical conditions, including antiphospholipid syndrome, rheumatoid arthritis, and systemic lupus erythematosus.[4] These chronic, lifetime conditions substantially impact several areas of Ms. Taylor' life, including her ability to work.[5] At issue in this case is her employment as a Patient Services Representative ("PSR") for Defendant IHC, which she began in February 2016.[6] In this role, Ms. Taylor worked in a call center assisting patients with tasks such as verifying patient, contact, and insurance information; completing and scanning paperwork; helping with payment and billing issues; and otherwise helping patients with administrative tasks related to their care.[7]

On account of Ms. Taylor's health conditions, she submitted a request for continuous leave under the Family and Medical Leave Act ("FMLA") in June 2020.[8] Ms. Taylor requested leave until November 2020, but she, upon receiving a release from her physician, returned to work at the end of August 2020.[9] Ms. Taylor chose to return to work because she did not feel remaining on leave was improving her conditions.[10]

Soon after her return, in September 2020, Ms. Taylor requested additional intermittent FMLA leave, as well as the ability to work from home.[11] In support of the request to work from

---

[4] Taylor Dep. at 16:25–27:14 (June 15, 2022).
[5] *Id*. at 20:7–10, 24:25–26:23, 39:6–40:10, 126:17–24, 128:14–21.
[6] *Id*. at 8:9–12.
[7] ECF No. 23, Ex. A-2 at 4–5.
[8] Taylor Dep. at 28:7–21.
[9] *Id*. at 28:7–25.
[10] *Id*. at 29:2–25.
[11] Taylor Dep. at 62:5–63:20; ECF No. 23, Ex. A-2 at 2.

home, Ms. Taylor's physician stated that Ms. Taylor was "[u]nable to sit at workstation in the office. Working from home in her recliner would allow better control of her pain. Immunosuppressed status (Enbrel)—safer to be at home due to COVID-19."[12] IHC granted Ms. Taylor's request for intermittent FMLA leave from September 1, 2020, to November 19, 2020, and allowed Ms. Taylor up to three leave-related absences per month with up to eight hours per episode.[13] As for Ms. Taylor's request to work from home, IHC denied Ms. Taylor the ability to do so[14]—at the time, no one at the PSR call center worked from home.[15] However, IHC offered Ms. Taylor alternative accommodations in attempt to accommodate her restrictions in the office setting.[16] First, because Ms. Taylor already worked alone in an office, IHC relocated an appliance in that room that was used by other employees, giving Ms. Taylor an even more private space.[17] With this accommodation, Ms. Taylor did not contract COVID-19.[18] Second, IHC approved the purchase of a chair for Ms. Taylor's use in her office.[19] Ms. Taylor was disappointed that she was not able to work from home, but she did not submit any additional documentation showing that the proposed accommodations would not effectively address her needs.[20]

Ms. Taylor's supervisor, Heather Reeve, asked Ms. Taylor about ordering a chair and describing the type of chair that was needed.[21] Ms. Reeve did not refuse to order a chair or

---

[12] ECF No. 23, Ex. A-2 at 1.
[13] Taylor Dep. at 74:24–75:12; ECF No. 23, Ex. A-3 at 2–3.
[14] Taylor Dep. at 78:7–25.
[15] *Id*. at 163:16–18.
[16] *Id*. at 72:12-17.
[17] *Id*. at 73:10–14.
[18] *Id*. at 69:21–71:3.
[19] *Id*. at 72:2–17.
[20] *Id*. at 78:20–80:6.
[21] *Id*. at 80:22–81:17.

indicate that she was not going to do so.[22] Then, Ms. Taylor spoke with Employee Health Nurse Shelly Kirton, the ADA liaison, who told Ms. Taylor to select a chair and tell Ms. Reeve to order it.[23] Ms. Kirton put no limitation on the type of chair Ms. Taylor could select.[24] Ms. Taylor, however, refused to select a chair for various reasons, including feeling that it was not official for her to select a chair and feeling that it was Ms. Reeve's responsibility to order the chair.[25] After refusing to select a chair, Ms. Taylor informed Ms. Kirton that she was holding off on the chair because she was hoping to get approval to work from home.[26] Ms. Taylor later attempted to submit a renewed request to work from home, but she sent the request to the incorrect number.[27]

In February 2021, Ms. Taylor requested another ADA accommodation, this time for continuous leave through May 19, 2021.[28] She stated that medication did not control her condition, that she wanted to go on ADA leave per her doctors' recommendations, and that work kept her body in a constant flare that could lead to a more severe progression of her ailments.[29] Ms. Taylor's physician noted that Ms. Taylor's conditions were indefinite.[30] IHC approved Ms. Taylor's leave request and agreed to hold her position open until at least March 10, 2021.[31]

Ms. Taylor did not return to work on March 10.[32] Rather, she pursued disability benefits through Defendant's third-party insurer, Hartford.[33] Ms. Taylor received both short-term

---

[22] *Id*.
[23] *Id*. at 91:16–23.
[24] *Id*. at 83:22–84:18.
[25] *Id*. at 82:10–93:15.
[26] ECF No. 2 ¶ 25; Taylor Dep. at 93:16–95:9.
[27] Taylor Dep. at 95:14–96:16.
[28] ECF 23, Ex. A-4 at 1–2.
[29] *Id*. at 2.
[30] *Id*. at 4-6.
[31] ECF No. 23, Ex. A-4 at 1; Taylor Dep. at 116:4–22.
[32] Taylor Dep. at 116:23–117:3.
[33] ECF No. 23, Ex. A-7.

disability benefits and long-term disability benefits from Hartford.[34] As of January 2023, Ms. Taylor receives Social Security Disability Insurance ("SSDI") benefits.[35]

On November 9, 2023, Ms. Taylor filed her Complaint in the instant action.[36] On January 10, 2025, IHC filed its Motion for Summary Judgment.[37] Ms. Taylor filed her Opposition on February 24, 2025,[38] and IHC's Reply was filed on March 10, 2025.[39]

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[41] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[42]

## ANALYSIS

The ADA prohibits an employer from discriminating against an employee by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."[43] To establish a prima facie case for failure to

---

[34] ECF No. 23, Ex. B.
[35] *Id.*
[36] ECF No. 2.
[37] ECF No. 23.
[38] ECF No. 27.
[39] ECF No. 28.
[40] Fed. R. Civ. P. 56(a).
[41] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).
[42] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).
[43] 42 U.S.C. § 12112(b)(5)(A).

accommodate, a plaintiff must show that "(1) she was disabled; (2) she was otherwise qualified; (3) she requested a plausibly reasonable accommodation; and (4) Defendant refused to accommodate her disability."[44] "[A]n adverse employment action is not a requisite element of an ADA failure-to-accommodate claim."[45]

Ms. Taylor raises several instances of alleged failure to accommodate in her Complaint: (1) IHC failing to find another way to accommodate Ms. Taylor when she refused to pick a chair, (2) IHC denying Ms. Taylor's request to work from home, and (3) IHC failing to accommodate Ms. Taylor when she requested leaves of absence in connection with her application for short-term disability benefits.[46] The undisputed facts, however, reveal that IHC granted all of Ms. Taylor's requests for leave, and the chair incident is connected to Ms. Taylor's request to work from home such that they can be viewed as a single instance. Thus, only one instance of alleged failure to accommodate is truly at issue—Ms. Taylor's request to work from home and IHC's denial of that specific request.

IHC argues that it is entitled to summary judgment on Ms. Taylor's failure to accommodate claim for two reasons. First, Ms. Taylor failed to engage in the interactive process, and second, Ms. Taylor was not qualified to perform the essential functions of her position. The Court will address each argument in turn.

## I. Because Ms. Taylor caused the breakdown in the interactive process, the Court finds that IHC is entitled to summary judgment

"The assessment of a plaintiff's prima facie case involves an analysis of the interactive process."[47] The interactive process begins when an employee provides notice to her employer of

---

[44] *Norwood v. United Parcel Serv., Inc.*, 57 F.4th 779, 786 (10th Cir. 2023).
[45] *Exby-Stolley v. Bd. of Cnty. Commr's*, 979 F.3d 784, 788 (10th Cir. 2020).
[46] ECF No. 2 ¶¶ 41–55.
[47] *Fletcher v. Discover Fin. Servs.*, No. 2:20-cv-00512, 2022 WL 3705467, at *4 (D. Utah Aug. 26, 2022) (unpublished).

her disability, which may include requesting certain accommodations.[48] This notice then triggers the employer's "duty to engage in good faith with [the plaintiff] . . . to determine her limitations and consider whether the accommodations she requested, or perhaps others that might come to light during this interactive process, would enable [the plaintiff] to return to work."[49] Both the employer and the employee are required to engage in ongoing participation and communication "because each side will possess different information, all of which is critical to determining whether there is a reasonable accommodation that might permit the disabled employee to perform the essential functions of her job."[50] The responsibility to share information is thus held by both parties,[51] and "[n]either party may create or destroy liability by causing a breakdown of the interactive process."[52]

When analyzing a breakdown in the interactive process, courts "should attempt to isolate the cause of the breakdown and then assign responsibility."[53] "[C]ourts must look at the interactive process 'as a whole' and, construing the facts in favor of the nonmoving party, 'determine whether the evidence requires a finding that one party's bad faith caused the breakdown.'"[54] "A party that 'fails to communicate, by way of initiation or response' or

---

[48] *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1193 (10th Cir. 2022); *Aubrey v. Koppes*, 975 F.3d 995, 1007 (10th Cir. 2020).
[49] *Aubrey*, 975 F.3d at 1007.
[50] *Id*.
[51] *McFarland v. Cty. & Cnty. of Denver*, 744 F. App'x 583, 587 (10th Cir. 2018) (unpublished) ("Both the employer and the employee have a responsibility to share relevant information in an attempt to craft a reasonable accommodation.").
[52] *Aubrey*, 975 F.3d at 1008-09.
[53] *Fletcher*, 2022 WL 3705467, at *4 (quoting *Everett v. Murphy*, No. 15-cv-372, 2016 WL 7350755 (E.D. Okla. Dec. 19, 2016) (unpublished)).
[54] *Id*. (quoting *Griego v. Kohl's, Inc.*, No. 21-cv-00045, 2021 WL 4947286, at *7 (D. Colo. Sep. 27, 2021) (unpublished)).

'obstructs or delays the interactive process' does not engage in the interactive process in good faith."[55]

Here, Ms. Taylor requested to work from home based on her physician's assessment that it would be safer for her to be at home due to the danger COVID-19 presented to her immunosuppressed status and that working from home in a recliner would allow her better control of her pain. IHC did not grant Ms. Taylor's specific accommodation request on the basis that she could not perform her essential job functions from home, but IHC presented Ms. Taylor with two alternative accommodations: removing the appliance other employees would come into Ms. Taylor's office to use so that she could have a more private space and approving the purchase of a chair for Ms. Taylor's office. These accommodations appear to specifically address the concerns articulated by Ms. Taylor's physician.

Concerning the removal of the appliance, although Ms. Taylor now contends that this was insufficient to accommodate her disability, Ms. Taylor has failed to point to any evidence that she communicated to IHC that the accommodation was insufficient. Indeed, Ms. Taylor admits that the accommodation may have been sufficient to address her autoimmune condition and that she did not contract COVID-19, which were the bases for her physician recommending she limit her interactions with others. "An employer cannot be expected to correct an impediment of which it is not aware."[56]

---

[55] *Nelson v. Salt Lake Cnty.*, No. 2:18-cv-00189-JNP-DBP, 2022 WL 957597, at *8 (D. Utah Mar. 30, 2022) (unpublished) (quoting *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999)).
[56] *McFarland*, 744 F. App'x 583 at 587 (holding that employee's failure to communicate that the accommodation given was insufficient was the sole cause of the breakdown in the interactive process).

As for the approval for the purchase of a chair for Ms. Taylor's office, when the ADA liaison told Ms. Taylor to select a suitable chair for IHC to purchase for her, Ms. Taylor refused to do so. Her reasoning for this refusal was, in essence, that she did not believe ordering the chair was her responsibility but was, rather, her supervisor's. Ms. Taylor, though, was told to select a chair and tell her supervisor to order it, and selecting a chair, or at least attempting to do so, was Ms. Taylor's responsibility in that it was her responsibility to engage in the interactive process. While there is some evidence that IHC was somewhat disorganized about ordering the chair, IHC, with its limited knowledge, could not have known what type of chair would best suit Ms. Taylor's needs without her input, which she refused to give. Ms. Taylor then told the ADA liaison she was holding off on the chair because she wanted to work from home. It is, however, "inconsistent with an employee's obligations to demand a specific accommodation then end the discussion."[57] Due to Ms. Taylor's refusal to select a chair and engage in the process, IHC could not move forward in determining whether a chair was a suitable option for Ms. Taylor.

Thus, having looked at the interactive process as a whole, the Court finds that Ms. Taylor caused the breakdown. Ms. Taylor does not clearly direct any counterargument to this issue, though she does argue that she declined IHC's alternative accommodations because she did not believe they would be reasonably equivalent to working from home. What Ms. Taylor does not appear to understand is that "[a]n employer is not required to always provide the employee with the best possible accommodations or in the specific manner the employee requested."[58] "It has broad discretion in determining which alternative accommodation should be provided."[59] Even

---

[57] *Fletcher*, 2022 WL 3705467, at *6.
[58] *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) (citing 29 C.F.R. § 1630.2(p)(1)).
[59] *Id*. (citing 29 C.F.R. § 1630.9).

assuming working from home was a reasonable accommodation for an individual in Ms. Taylor's position—despite that she has pointed to no evidence supporting this, relying only on conjecture about advancements in technology—Ms. Taylor was not entitled to her preferred accommodation. Had Ms. Taylor engaged in the interactive process, the parties might have found that IHC's offered alternative accommodations were indeed insufficient, and they might have found that some other accommodation was necessary. But Ms. Taylor cannot demand a single, preferred accommodation, then refuse to work in good faith with IHC toward a solution because that solution is not the exact one she wanted.

In sum, because Ms. Taylor caused the breakdown in the interactive process, no reasonable jury could find that IHC failed to accommodate her. As Ms. Taylor cannot thus establish a prima facie case for failure to accommodate, IHC is entitled to judgment as a matter of law.

II. **IHC is also entitled to summary judgment because, even assuming Ms. Taylor was otherwise qualified, Ms. Taylor has failed to show that she requested a plausibly reasonable accommodation**

In addition to Ms. Taylor's failure to engage in the interactive process, IHC argues that it is entitled to summary judgment because Ms. Taylor cannot establish that she was "otherwise qualified," the second element of her failure-to-accommodate claim.[60] Under the ADA, a disabled person is "qualified" if the individual, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[61] "The determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision."[62] Ms. Taylor concedes that

---

[60] *Norwood*, 57 F.4th at 786.
[61] 42 U.S.C. § 12111(8).
[62] *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000) (citation omitted).

she could not perform the essential functions of her job without reasonable accommodation, contending that the issue is, rather, whether she could perform those functions with such accommodation. The relevant employment decision is IHC's refusal to allow Ms. Taylor to work from home. Therefore, to achieve summary judgment on this ground, IHC "must show that it is undisputed that no reasonable accommodation would have permitted [Ms. Taylor] to perform the essential functions of her position"[63] as of IHC's denying the work-from-home request or soon thereafter.

Before entertaining IHC's specific arguments, the Court notes that IHC's claiming Ms. Taylor cannot show she was otherwise qualified conflicts with its assertion that at least two reasonable accommodations existed, the private office and the special chair, that would have addressed her needs at the relevant time. This assertion suggests that both parties agree that a reasonable accommodation existed that would have permitted Ms. Taylor to perform the essential functions of her position, though they disagree about which accommodations were reasonable. It is unclear if IHC offers this argument in the alternative, and thus, it is possible that the second element of Ms. Taylor's prima facie claim—that she was "otherwise qualified"—is not truly in dispute. Regardless, although IHC's arguments may not amount to a showing that Ms. Taylor cannot prove the second element of her prima facie claim, they reveal that she cannot prove the third element, which requires Ms. Taylor to show that she requested a plausibly reasonable accommodation.

IHC asserts that Ms. Taylor cannot show she was otherwise qualified because she has made sworn admissions, and submitted medical documentation showing, that she is unable to

---

[63] *Nelson*, 2022 WL 957597, at *7.

perform the essential functions of her position in connection with applications for long-term disability benefits and SSDI benefits, as well as with her February 2021 leave request.

Regarding the benefits, neither the Hartford benefits[64] nor SSDI benefits take into consideration whether the individual can work given reasonable accommodations,[65] so Ms. Taylor's receiving these benefits may not be inconsistent with her claim that she could work if accommodated. Moreover, "the nature of an individual's disability may change over time, so that a statement about that disability at the time of an individual's application for [] benefits may not reflect an individual's capacities at the time of the relevant employment decision."[66] However, a plaintiff cannot ignore the contradiction and must offer sufficient explanation.[67] Ms. Taylor argues that she could have continued to work, at least for some period of time, if she had been allowed to work from home. Whether that is a sufficient explanation is a question for the jury.

As for Ms. Taylor's February 2021 leave request that represents her conditions as "indefinite," Ms. Taylor stated in her deposition that working in the office without accommodation exacerbated her conditions such that the state of her conditions was worse in February than it was when IHC denied the work-from-home request.[68] Thus, the February 2021 leave request does not necessarily preclude Ms. Taylor from showing that she was otherwise qualified at the relevant time.

Nonetheless, it is Ms. Taylor who bears the burden to show that a reasonable accommodation existed that would enable her to perform the essential functions of her job.[69] Ms.

---

[64] ECF No. 23, Ex. A-7 at 11.
[65] *See Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999).
[66] *Id*. at 805.
[67] *Id*. at 806.
[68] Taylor Dep. at 127:15–128:21.
[69] *Aubrey*, 975 F.3d at 1006.

Taylor has suggested one accommodation: working from home. She insists this is a reasonable accommodation, and the law does indicate that a request to work from home may be reasonable unless it eliminates an essential function of the job.[70] But the employee must present "evidence she could perform the essential functions of her position at home."[71] The parties dispute whether working from home would eliminate essential functions of Ms. Taylor's position, and Ms. Taylor offers no evidence illustrating that she could accomplish her duties remotely. The record indicates that at the relevant time, no one in Ms. Taylor's position worked from home. Certainly, the world has changed since COVID-19 and technology has advanced, but speculation is insufficient. As it stands, there is no evidence by which the jury could find that this accommodation was plausibly reasonable. Thus, even were the Court to assume Ms. Taylor was otherwise qualified, Ms. Taylor's prima facie case fails because she cannot establish the third element, that she requested a plausibly reasonable accommodation. IHC is therefore entitled to summary judgment for this reason in addition to Ms. Taylor's failure to engage in the interactive process.

## ORDER

Based on the foregoing, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 23).

DATED this 29th day of August 2025.   BY THE COURT:

Ann Marie McIff Allen
United States District Judge

---

[70] *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1124 (10th Cir. 2004).
[71] *Id.*